Violet McCown, appellant, v. Alvin L. Schram, Ad-
ministrator, appellee.
289 N. W. 890

Filed February 2, 1940.  No. 30657.

*Hubka & Hubka* and *R. M. Anderson,* for appellant.

*Baylor, Tou Velle & Healey, contra.*

Heard before Simmons, C. J., Eberly, Paine, Carter,
Messmore and Johnsen, JJ.

Paine, J.

This is an action for personal injuries sustained by a
guest passenger in an automobile, which it is alleged was
operated in gross and wanton negligence near Marysville,
Kansas. It is brought by the mother of the minor guest
against the administrator of the estate of the driver, who
was killed in this accident. The evidence of the plaintiff
included the offer of certain sections of the statutes of
Kansas and a number of decisions of its supreme court
which had been duly pleaded in the amended petition. When
the plaintiff rested, the defendant demurred to the evidence,
and the demurrer being sustained the trial court dismissed
the action and overruled the plaintiff's motion for a new
trial.

The defendant's demurrer to the evidence was based upon the following reasons: (1) The evidence of the plaintiff is insufficient to support a cause of action in favor of the plaintiff and against the defendant; (2) the evidence fails, as a matter of law, to establish that the defendant's decedent was guilty of gross and wanton negligence toward the plaintiff; (3) the evidence is insufficient to establish beyond a point where reasonable minds may differ that the defendant's decedent was guilty of gross and wanton negligence toward the plaintiff; (4) the evidence discloses that the defendant's decedent, as a matter of law, was not guilty of gross and wanton negligence toward the plaintiff; (5) the evidence discloses beyond a point at which reasonable minds may differ that the defendant's decedent was not guilty of gross and wanton negligence toward the plaintiff; (6) the evidence establishes that the defendant's decedent under the laws of Kansas was not guilty of gross and wanton negligence toward the plaintiff; (7) the evidence establishes that the defendant under the law is not liable to the plaintiff; (8) the evidence discloses that the plaintiff assumed the risk of riding with the defendant's decedent.

The plaintiff's case having been dismissed on a demurrer to the evidence, it is necessary to briefly set out the evidence which was before the jury. Violet McCown, the plaintiff, who was about 17 years of age, her cousin, Ruth Day, who was the same age, the deceased driver of the car, Arnold L. Schram, whose nickname was "Speck," an employee of Wilke's bakery in Beatrice, and his friend, Lewis Gaver, who had been his "buddy" and pal for about three years, were the four parties in the Chevrolet sedan at the time of the accident. About 8:30 p. m., June 25, 1937, Gaver went to the bakery to meet "Speck," and soon thereafter the two went to Beck's poolroom, where they each drank five bottles of regular beer in the time they remained there. They then drove to Howe's Barbecue, where each drank two more bottles of beer, and Schram then drove home to change his clothes. About 9:30 to 9:45 he returned

with Ruth Day and Violet McCown as guests in his automobile, and picked up Lew. After driving about Beatrice for a while, Schram said he wanted to see Jimmie Travis, a friend who had recently opened a restaurant at Marysville, Kansas, and leaving Beatrice at about 10:20 they drove to Marysville at about 45 miles an hour, stopping at Wymore, where Schram bought three more bottles of beer, which he drank on the way to Marysville, drinking the last bottle as he drove into Marysville.

When they reached the Travis restaurant, the proprietor was not there, and Schram and Gaver and two friends, Jim Winters and Art Axtell, went behind the restaurant to drink spiked "Coke" so the girls, who were sitting in the car, would not know it. Art Axtell testified that he opened each bottle of "Coke" and poured it out down to about an inch and a half from the top and filled it up with whisky, and each one of the four men drank a bottle of this spiked "Coke." Shortly thereafter they started home. Before leaving, the driver, Schram, disconnected the speedometer so the girls would not see how fast he was going, as he said he was in a hurry to get to Beatrice and finish some work he had to do at the bakery. They started west from Marysville, driving on a graveled road, rough like a washboard, with hardly room enough for two cars to pass. The accident occurred about a half mile west and three miles north of Marysville. Schram drove his car in the center of this graveled road, and some of the time on the west, or wrong, side of the road, and the evidence of some of the witnesses was that he was driving 60 to 70 miles an hour. The plaintiff, Violet McCown, who was sitting with Schram in the front seat, warned him several times to slow down, but he paid no attention to her. When she saw the lights of the other car approaching, Violet said, "My God, Speck, watch out." After the collision the driver endeavored to right his car, but failed, for the car turned completely over and landed on the west side of the road on its wheels. In turning over, the driver was thrown under the car and killed, and the plaintiff suffered many injuries, among which

were five cuts on her forehead and face, leaving scars which, it is explained, will interfere with her work as a beauty parlor operator.

The testimony shows that immediately after the accident the three survivors reached an agreement that they would protect the driver and say nothing at all about his drinking, which tends to account for a statement being signed by Ruth Day on July 8, in which she said that she had the feeling that Schram was driving carefully at the time of the accident, with both hands on the wheel, and paying strict attention to his driving, and that neither Arnold nor Lewis had anything to drink of an alcoholic nature. She testified that the gentleman who got her to sign the statement told her that the purpose of the statement was so that Mr. and Mrs. Schram could get "Speck's" life insurance, and claimed that she did not read the statement, nor was it read to her, but that the gentleman asked her some questions and wrote something down, and she signed it. This statement was identified as defendant's exhibit A, and introduced as part of the cross-examination of Ruth Day. She explained on cross-examination that out there in the road right after the accident Lew told them that the driver had been drinking, and the three of them agreed to say nothing about his drinking.

The plaintiff introduced in evidence several sections of the Kansas law relating to drinking and driving a car. Kansas did not repeal its state prohibition law after the Eighteenth Amendment was set aside, and section 21-2174, Gen. St. Kan. 1935, provides that driving while under the influence of liquor is a felony, and this section reads as follows: "Driver under influence of intoxicating liquor or drug injuring another. That it shall be deemed a felony for any one under the influence of intoxicating liquor, or any exhilarating or stupefying drug, to injure another person by reckless driving of a vehicle upon any public road, highway, street, avenue, driveway or alley within the state of Kansas."

The guest statute of Kansas is section 8-122b, Gen. St.

Kan. 1935, and reads as follows: "Right of guest to collect damages from owner or operator. That no person who is transported by the owner or operator of a motor vehicle, as his guest, without payment for such transportation, shall have a cause of action for damages against such owner or operator for injury, death or damage, unless such injury, death or damage shall have resulted from the gross and wanton negligence of the operator of such motor vehicle."

In a late Kansas decision, *Donelan v. Wright,* 148 Kan. 287, 81 Pac. (2d) 50, it is held: "The authorities will lead us to the conclusion that to constitute wantonness so as to permit recovery under G. S. 1935, 8-122b, the conduct must be such as to evince a willingness that harm might result therefrom, or as to evince a reckless unconcern that plaintiff might be injured."

"The meaning of this statute has been frequently considered and expounded in motor car accident cases arising since the enactment. The most recent of these are: *Aduddell v. Brighton,* 141 Kan. 617, 42 P. (2d) 555; *Murrell v. Janders,* 141 Kan. 906, 44 P. (2d) 218; and *Anderson v. Anderson,* 142 Kan. 463, 50 P. (2d) 995. In *Koster v. Matson,* 139 Kan. 124, 30 P. (2d) 107, 110, the action was by a guest against the driver of an automobile for injuries sustained in a motor car accident in Nebraska. The pertinent Nebraska 'guest' accident statute (Comp. St. Supp. Neb. 1935, sec. 39-1129) was substantially similar to our own. It was pointed out that wantonness is essentially different from negligence, not merely in degree but in kind of conduct." *Cohee v. Hutson,* 143 Kan. 784, 57 Pac. (2d) 35.

The Kansas court has held: "Independently of any statute it is negligence as a matter of law to drive an automobile along the highway on a dark night at such speed that it cannot be stopped within the distance that objects can be seen ahead of it." *Fisher v. O'Brien,* 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F, 610. See, also, *Watson v. Travelers Mutual Casualty Co.,* 146 Kan. 623, 73 Pac. (2d) 64.

In Nebraska, Iowa, California, and Oregon the guest statutes specify as a distinct ground of liability the fact

that the driver was intoxicated, but such is not the case with the Kansas guest law. It is proper, however, for the jury to consider evidence of intoxication in determining whether the driver was guilty of gross and wanton negligence in attempting to drive at very high speed after he had consumed a large amount of intoxicating liquor. *Hackbart v. Rohrig,* 136 Neb. 825, 287 N. W. 665; *State v. Gloyd,* 148 Kan. 706, 84 Pac. (2d) 966; *Koster v. Matson,* 139 Kan. 124, 30 Pac. (2d) 107; *McGrath v. Nugent,* 133 Neb. 237, 274 N. W. 549.

The jury might also consider the evidence that the driver disconnected the speedometer on the automobile to conceal from plaintiff the excessive speed at which he intended to drive.

The jury might also consider the evidence to the effect that the driver of the car failed to keep proper lookout ahead, and at the time of the collision was either driving in the middle or to the left-hand side of a narrow road, and that after the collision the car landed over to the left of the main-traveled part of the road. *Morris v. Erskine,* 124 Neb. 754, 248 N. W. 96; *Larson v. Storm, ante,* p. 420, 289 N. W. 792.

The question of gross and wanton negligence under the guest law of Kansas is for the jury, where the evidence is conflicting, and from which reasonable minds might draw different conclusions.

In our opinion, the evidence of plaintiff was sufficient so that the trial court was not justified in taking the case from the jury and dismissing it.

REVERSED AND REMANDED.