WAGGAMAN v. GENERAL FINANCE CO. OF PHILADELPHIA, PA., Inc. WARFIELD v. SAME.

Nos. 7423, 7424.

Circuit Court of Appeals, Third Circuit.

Nov. 27, 1940.

F. E. Darkow and Samuel S. Herman, both of Philadelphia, Pa., for appellant.

Francis L. Van Dusen, of Philadelphia, Pa., G. A. Chadwick, Jr., of Washington, D. C., and Joseph S. Clark, Jr., and Dechert, Smith & Clark, all of Philadelphia, Pa., for appellees.

Before MARIS and JONES, Circuit Judges, and BARD, District Judge.

JONES, Circuit Judge.

The appellant was the defendant below in two actions at law brought by the respective plaintiffs for injuries suffered by them in the same circumstances through the alleged negligence of the defendant. The two cases were tried together to a jury which returned a verdict in favor of each of the plaintiffs. It is from the judgments entered by the trial court upon the verdicts that the defendant has appealed. Both appeals, which were argued together, raise the same questions and will be dealt with in this opinion. The principal questions presented are (1) whether there was sufficient evidence to justify the jury's finding of a master and servant relationship between the appellant and the actual tort-feasor whereby the negligence of the latter may be legally imputed to the former and (2) whether the verdicts, or either of them, are excessive. There is a further question incidentally raised as to the trial court's charge with respect to the damage to the plaintiff Warfield due to the loss of her automobile through the collision.

The appellant is engaged in the automobile finance business in Philadelphia where it maintains its principal office and a place for the storage of automobiles which it repossesses when its debtors fail to meet their obligations timely.

While the plaintiffs were driving in an automobile owned by one of them (Charlotte C. Warfield) near Havre de Grace, Maryland, an automobile which had been repossessed in Washington, D. C., in behalf of the appellant and was then being driven to the appellant's place of storage in Philadelphia, collided with the Warfield automobile causing the injuries to the plaintiffs for which they brought suit. The negligence of the driver of the repossessed car, one Houston, as well as the plaintiffs' freedom from contributory negligence, is conceded by the appellant and is therefore not involved here. On the question of liability, it is the appellant's contention that Houston's immediate employer (one McWilliams, of Washington, D. C., who traded under the name of Motor Finance Company) was an independent contractor in the matter of repossessing automobiles for the appellant and in having them driven to its storage in Philadelphia and that McWil-

liams' negligence (i. e. Houston's) cannot, as a matter of law, be imputed to the appellant. This question necessitates a review of the evidence respecting the relationship between the appellant and McWilliams and either or both of them and Houston.

McWilliams, whose business consisted principally of making collections of outstanding delinquent accounts for automobile finance companies, engaged to collect accounts and make repossessions of automobiles for the appellant in and around Washington, D. C. Under the arrangement the appellant sent delinquent accounts to McWilliams who was either to try to effect collection or to repossess the automobiles, as the instructions in the particular case might be. The instructions, which were both oral and written, were uniformly followed by McWilliams. Other documentary evidence also indicates close control and direction by the appellant over McWilliams' work. After repossessing an automobile, McWilliams would dispatch it by a driver to the appellant's place of storage in Philadelphia. The route to be followed and who should drive the car was for McWilliams to decide. At times, what efforts at collection should be exerted before repossessing an automobile was left to McWilliams' discretion and, at other times, when there seemed to be a reasonable prospect after a repossession that the delinquent purchaser might make good his default, McWilliams would not send the repossessed automobile to Philadelphia immediately but would store it in Washington temporarily. But, in any case, he reported daily to the appellant and, in general, acted under direct instructions from the appellant.

To accredit McWilliams with evidence of his authority to act for the appellant in making collections and repossessions, the appellant authorized him to have cards printed which showed the name of the appellant company in the center, with McWilliams' trade name (Motor Finance Company) "down in the corner" and McWilliams' own name appearing under the latter. For his services to the appellant in repossessing automobiles and driving them to Philadelphia, McWilliams was paid a flat fee per car and expenses. Houston, whose work was limited exclusively to delivering repossessed cars to the appellant's place of storage in Philadelphia, was paid a weekly wage by McWilliams.

As the accident which inflicted the plaintiffs' injuries occurred in Maryland, the law of that state, under well settled principles, determines the legal incidents of the case. Restatement of the Law, Conflict of Laws, §§ 378 and 379. But, no proof of the law of Maryland was introduced at trial in the District Court (E. D. Pa.). In further effectuation of the policy of federal jurisprudence enunciated in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, it would seem proper for a federal court to follow the rule of the State of the forum on a question of conflict of laws. See Goodrich, Conflict of Laws (2d Ed.), § 12. Accordingly, we resort to the pertinent rule of Pennsylvania, the forum State of the trial court, for the ascertainment of the Maryland law. In Pennsylvania, it is well settled that, in the absence of evidence to the contrary, the common law of another common law state is presumed to be the same as the common law of Pennsylvania. General Motors Acceptance Corp. v. Foley, 311 Pa. 477, 166 A. 909; Cochran v. Shetler, 286 Pa. 226, 133 A. 232; Baxley v. Linah, 16 Pa. 241, 55 Am.Dec. 494; Restatement of the Law, Conflict of Laws, § 622.

The appellant reserved its point of law as to its liability by requesting a directed verdict, Rule 50(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which the trial judge refused, and assigns for error the trial court's denial of its motions for judgments n. o. v. It is our duty to determine whether the action of the court below was proper and, if not, we may direct the entry of the appropriate judgment. Aetna Insurance Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L.Ed. 1177; Baltimore & C. Line v. Redman, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636. A verdict should not be allowed to stand if, after resolving all inferences from the evidence most strongly against the one complaining of the verdict, there appears to be no legal substance to support it. Gulf, M. & N. R. Co. v. Wells, 275 U.S. 455, 48 S.Ct. 151, 72 L.Ed. 370; Chicago, M. & St. P. R. Co. v. Coogan, 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041.

Under the doctrine of respondeat superior, a master is liable for the tortious conduct of his servant where the latter acts within the scope of his employment. Loper v. P.-G. Publishing Co., 312 Pa. 580, 169 A. 374; Restatement of the Law, Agency, §

219. A servant is one employed to render services for another who has control over the servant's physical conduct in the performance of the services. McColligan v. Pennsylvania R. R. Co., 214 Pa. 229, 63 A. 792, 6 L.R.A.,N.S., 544, 112 Am.St.Rep. 739; Cox v. Roehler, 316 Pa. 417, 175 A. 417, citing Restatement of the Law, Agency, § 220. If the interest of the employer is only in the results and he does not control and has no right to control the means of accomplishing the results, the employee is held to be an independent contractor. Tyler v. MacFadden Newspaper Corp., 107 Pa.Super. 166, 163 A. 79, and cases there cited. The employer's right to limited direction, in order to assure desired results, does not destroy his insulation from liability for the torts of his independent contractor employee. Smith v. Simmons, 103 Pa. 32, 49 Am.Rep. 113; Simonton v. Morton, 275 Pa. 562, 119 A. 732.

In the instant case the appellant was, of course, interested in results, but there was evidence that it exercised control over the means of accomplishing those results to a degree beyond a mere measure of control to insure the ends desired. In that case, if the testimony as to the appellant's control, which the plaintiffs adduced, is such that, in sound judicial discretion, a verdict in their favor could not be disturbed, refusal of a directed verdict for the defendant was proper. See Gulf, M. & N. R. Co. v. Wells, supra; Western & A. R. Co. v. Hughes, 278 U.S. 496, 49 S.Ct. 231, 73 L.Ed. 473; A. B. Small Co. v. Lamborn & Co., 267 U.S. 248, 45 S.Ct. 300, 69 L.Ed. 597.

While there is no express agreement defining the relationship between McWilliams and the appellant, there is testimony which, if believed by the jury, was sufficient to support a finding that the appellant was a master in control of the manner and means of its servant's (McWilliams') performance of his duties to it. McWilliams not only had general instructions to deliver to the appellant's place of storage in Philadelphia the cars which he repossessed for it, but in answer to the question "Did you receive any specific instructions as to each individual account?" McWilliams answered "yes, on each account." McWilliams was not hostile to the appellant. In fact the probability is that if he had any bias it was in favor of the appellant. From his testimony it may reasonably be inferred that he acted according to the appellant's instructions either because his arrangement with the appellant required him so to do or because he was specifically told what to do. Such is the manner in which McWilliams indicates his conception of his duties to the appellant. The impression of the parties as to the relationship existing between them is important in determining the element of control. See Restatement of the Law, Agency, § 220(2) (i), and comment i. It is also of some significance that McWilliams in carrying out his duties made daily telephone reports to the appellant. Such frequency in contact and reporting would fairly support an inference that the appellant controlled McWilliams in the means of effecting his work. At least, it may be said that it is not clear that a master and servant relationship did not exist between the appellant and McWilliams. The question was therefore properly one for the jury. See Restatement of the Law, Agency, § 220, comment b. On the record before us, it would be no less than a usurpation of the jury's province for the court to say, as a matter of law, that a master and servant relationship did not exist between the appellant and McWilliams.

Nor is the appellant's responsibility any less because Houston, an employee of McWilliams, was the driver of the car. With McWilliams' status as the servant of the appellant established, the latter's liability attaches equally even though an employee of McWilliams was driving the automobile at the time of the accident. A servant may be empowered to hire another to assist him in the performance of his work and that other can vicariously affect the superior master. Restatement of the Law, Agency, § 81, comment b. It may be fairly said that the arrangement between the appellant and McWilliams for the delivery of repossessed cars contemplated McWilliams' hiring drivers to deliver them. It was not intended that McWilliams should personally drive the repossessed cars to the appellant in Philadelphia. Indeed, it was not possible for him to make all of the deliveries, a fact known to the appellant. The record shows the delivery to Philadelphia of a large number of automobiles which McWilliams had repossessed for the appellant and it further shows that Houston's job with McWilliams was exclusively to drive to Philadelphia the cars reclaimed for the appellant. McWilliams' authority to

hire another to assist him in performing his work for the appellant may be reasonably inferred from the evidence. That only McWilliams paid Houston is not determinative that Houston was not a co-servant for the appellant. Burns et al. v. Elliott-Lewis Electric Co., 118 Pa.Super. 243, 248, 179 A. 47. In White v. Consumers Finance Service, Inc., 339 Pa. 417, 15 A.2d 142, where the defendant's employee asked a person to assist him in repossessing a car, the defendant knew nothing of the assistance and there was no evidence that assistance was required nor did the circumstances imply the employee's authority to obtain assistance. Hence, liability was not visited upon the employer for the negligence of the unauthorized assistant of the employee. The facts in this case are to the contrary. The evidence is sufficient to support a finding of a master and servant relationship between the appellant and McWilliams and, by the same token, between the appellant and Houston. And, once the relationship is so found, the negligence of Houston or McWilliams becomes the negligence of the appellant. The question of the appellant's negligence was, therefore, necessarily for the jury and refusal of directed verdicts for the defendant and likewise a denial of its motions for judgment n. o. v. was proper. This disposes of the appellant's contentions with respect to the question of liability.

■ The appellant's complaint that the verdicts are excessive calls for little discussion. The proven extent and the present and prospective effect of the injuries suffered by the plaintiffs fully justified the jury's awards. Where damages are unliquidated and the measure does not give a mathematically certain result, before a court may disturb a jury's verdict on the ground of excessiveness, the verdict must in fact appear to be excessive. Powers v. Wilson, 2 Cir., 110 F.2d 960; United States Can Co. v. Ryan, 8 Cir., 39 F.2d 445, certiorari denied, 282 U.S. 842, 51 S.Ct. 23, 75 L.Ed. 748. This rule is peculiarly applicable in actions for personal injuries based upon tort. See generally 15 American Jurisprudence, §§ 204–366. We cannot say that either of the verdicts involved in these appeals was excessive. The trial court deemed the verdicts just and refused to interfere with them; and we find nothing in the record to warrant our holding that, in so doing, the court below was guilty of an abuse of discretion.

■ The appellant further contends that the trial court erred in submitting to the jury as a permissible element of damage in the case of the plaintiff Warfield any loss suffered by her through injury to her automobile and clothing by reason of the collision. This contention the appellant bases upon the assertion that there was no evidence as to the extent of such loss. Following the charge of the court, the defendant took exception, inter alia, to the submission of the question of damage to the automobile on the ground that "the evidence was [not] sufficient on that [damage to automobile] to prove any loss to Mrs. Warfield". This exception provoked a colloquy between the court and counsel for the defendant which was concluded by counsel's stating "I merely take an exception to it. As Your Honor knows, I am not so much interested in the damage feature." A little later, confirmatory of this want of concern as to the sufficiency of the evidence in support of various elements of minor damage, counsel for the defendant said: "* * * After all, these things, as Your Honor knows, are not my phase of the case; it is the agency in which I am concerned, and I think the jury understands that." No formal exception was even taken to the submission of the question of damage to the plaintiff's clothing. Special findings as to the amount of any allowances to Mrs. Warfield for damage to her automobile and clothing were not requested and the jury was permitted to return a general verdict. To reverse, in such circumstances, for insufficiency of evidence of damage as to these relatively small items, would work hardship which the appellant is in no position to inflict. If an element of unproven minor damage possibly permeated the general verdict, the defendant was not without blame for the situation. The jury could have segregated the item which, later, could have been dealt with separately on the basis of the defendant's exception. But the defendant chose not to exercise its right to request a special finding with respect to such damage and expressly disclaimed interest in the matter at the critical time. Moreover the defendant suffered no substantial harm. Even with damage to Mrs. Warfield's automobile and clothing entirely disregarded, the jury's verdict would still be no more than just compensation for her loss due to personal injuries. Nor is it likely that the verdict would be any less if the case were returned to the court below for a jury's reascertainment of the dam-

ages to which alone any retrial would be properly restricted. In our opinion there is no meritorious basis for the appellant's complaint.

The judgments of the District Court are affirmed.