## PETERSEN v. CHICAGO, GREAT WEST-ERN RY. CO.

### Civil Action No. 348.

District Court, D. Nebraska,
Omaha Division.

Jan. 30, 1943.

R. B. Hasselquist and Donald S. Krause, both of Omaha, Neb., for plaintiff.

Brown, Crossman, West, Barton & Fitch, of Omaha, Neb. (by Ralph M. West and John L. Barton, both of Omaha, Neb.), for defendant.

DELEHANT, District Judge.

After trial to the court with a jury, resulting in a verdict and judgment for the defendant, and plaintiff, within the period of ten days from the entry of judgment, filed in the office of the Clerk of this Court a written motion for a new trial, which has never been served. The defendant thereafter moved to strike the motion for a new trial on the ground that it was not served within the requirement of Rule 59(b), F.R.C.P., 28 U.S.C.A. following section 723c. The court required that, at a single hearing, arguments be presented upon the motion to strike, and (upon the hypothesis that the court might not sustain the motion to strike) also upon the merits of the motion for a new trial. That argument has been had and typewritten briefs have also been presented to the court upon the issues thus arising.

In logical order, the court's consideration should proceed first upon the motion to strike, for if it be well taken, there is no motion for a new trial before the court. With acknowledged reluctance, the court has arrived at the conclusion that the motion to strike must be sustained. Rule 59(b); Rule 5(a) (b) (d); Rule 6(b); Theiss v. Owens-Illinois Glass Company, D.C., 1 F.R.D. 175; Nabors v. Texas

Company, D.C., 32 F.Supp. 91; Marshall's U. S. Auto Supply, Inc., v. Cashman, 10 Cir., 111 F.2d 140; Hughes Federal Practice, vol. 17, § 19187, Note 19.

By Rule 59(b), it is provided (with an exception not material here) that "A motion for a new trial *shall be served not later than 10 days after the entry of the judgment.*" There is no issue before the court respecting the adequacy of an attempted service, for no service whatsoever is shown to have been made or undertaken, and the defendant, by affidavit duly served and filed and undisputed, expressly negatives service. Section 59(b) of itself contains no requirement whatsoever for the filing of a motion for a new trial. But such a motion is within the mandate of Rule 5(d), whereby it is provided that "all papers after the complaint required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter." Thus, a distinction is clearly made between "serving" and "filing", and that distinction is frequently emphasized elsewhere throughout the rules. And as to a motion for a new trial, its service is made mandatory by the quoted language of Rule 59(b). The method of service is clearly defined in Rule 5(b).

Emphasis is added to the imparative language of Rule 59(b), by the express exclusion of that rule from the judicial indulgence allowed in Rule 6(b) wherein it is provided that "it (the court) may not enlarge the period for taking any action under Rule 59 (with an exception not now involved)". It is reinforced by the denial to the court by Rule 59(d) of any power upon its own initiative to order a new trial except within "10 days after entry of judgment".

Theiss v. Owens-Illinois Glass Company, supra, cited by the defendant, is directly in point in support of the motion to strike. In principle Nabors v. Texas Company, supra, indicates a like mandatory construction of a requirement for service as distinguished from mere filing.

The court considers that the motion to strike must be sustained and that the motion for a new trial must accordingly be stricken. And that is the court's ruling.

The admitted reluctance to make the ruling thus announced issues from the interesting, if not valid, question of federal procedure suggested by the motion for a new trial. Since it was argued and submitted concurrently with the motion to strike, its brief statement and consideration may be in order.

The case came to this court by removal on the ground of diversity of citizenship from the District Court of Douglas County, Nebraska. It involves a claim for damages due to personal injuries allegedly sustained in the state of Iowa by the plaintiff in consequence of the defendant's negligence in the operation of one of its railroad trains upon which the plaintiff was a passenger. Though the plaintiff's petition was filed in the Nebraska state court, the defendant's answer was filed and the issues were finally matured in this court after removal. Neither the petition nor the answer explicitly alleges anything respecting the admittedly applicable local law of Iowa. Nor was evidence introduced upon the point. The court's instructions were predicated upon the law of Iowa. The plaintiff did not except to the charge as given, and does not challenge, but rather concedes, its accuracy as a reflection of the Iowa law. Her motion asserts only that the court erred in declining to give an instruction (probably her requested instruction 6) tendered in writing by her, which is founded upon the premise that, though the law of Iowa governs the substantive rights of the parties, in the absence of pleading and proof to the contrary, that law must be conclusively presumed to be the same as the law of Nebraska, in which state, this court sits.

The defendant contends that the plaintiff is precluded from predicating error upon the court's charge by her failure to except within the strict terms of the concluding two sentences of Rule 51, on the completion of the court's charge. But before argument, at the close of the evidence the plaintiff in writing sought the instruction which the court, after argument and upon due consideration, refused. To that ruling the plaintiff excepted. And in the court's invitation of exceptions at the close of its charge, this significant language occurs: "Now, the court inquires of counsel, whether, *apart from the preserved exceptions to the rulings on the requests to charge,* there is any exception to the charge." This court does not consider that a negative reply to that query waived the previously allowed exceptions; and the point thus made by the defendant would not alone prompt the court to decline to examine the motion on its merits.

Prescinding, for the present, from the material question whether the precise instruction submitted should have been given in any event, and from the ambiguity of the plaintiff's position in the submission of her instructions (vide infra), the court considers that the plaintiff's position is not well taken on its broader ground.

The plaintiff argues that within the thought of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, this court must follow the rule of the state of the forum on a question of conflict of laws, and she cites in her support Waggaman v. General Finance Co., 3 Cir., 116 F.2d 254. . Her reasoning proceeds by these steps: (a) The law of Nebraska on conflict of laws must govern so far as it is involved in this case; (b) By that law since the plaintiff's petition rests upon an alleged tort committed in Iowa, the law of the state of Iowa governs upon the substantive issue of the existence of a cause of action; (c) Iowa is, as to Nebraska, a foreign state; (d) The law of a foreign state, in a Nebraska state court is a fact which must be pleaded and proved; (e) If not so pleaded and proved it must be taken and held to be identical with the law of the forum; (f) Therefore, in this case, in the absence of such pleading and proof, the court was obliged to instruct, contrary to actuality, that the governing substantive law of Iowa is identical with that of Nebraska. In these steps the court will readily grant points (a) and (b), and to the extent only of the practice in the local state courts points (c), (d) and (e). But the conclusion does not follow, for it neglects the distinction in origin and nature of the federal and state courts and the rule of judicial notice which must be applied in this court.

■ That the Waggaman case fully sustains the position of the plaintiff can hardly be questioned though even the plaintiff acknowledges the lack of thoroughness and maturity in its discussion of the point here argued. Further study will indicate also that the Supreme Court in Klaxon Company v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, and Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481, 134 A.L.R. 1462, held s[...]rely, upon the authority of Erie R. Co. v. [...]ompkins, supra, that, "in diversity of ci[...] [...]nship cases, the federal courts, when de[...] 'ing questions of conflict of laws, must fo[...] w the rules prevailing in the states in which they sit." And an exhaustive research upon the subject is contained in Sampson v. Channell, 1 Cir., 110 F.2d 754, 128 A.L.R. 394, (certiorari denied June 3, 1940, 310 U.S. 650, 60 S.Ct. 1099, 84 L.Ed. 1415); in which, essentially, the same result is reached. However, those cases were relevant directly to issues generally controlled by the lex fori, the Klaxon case to the right to add interest to the recovery under a contract effective in a foreign state as an incidental item of damages, the Griffin case to the enforcement of a foreign insurance contract repugnant to the public policy of the state of the forum, and the Sampson case to the burden of proof upon the issue of contributory negligence in an action founded on negligence. What was chiefly and directly denounced in the Klaxon Company case was the trial court's employment of an "independent determination of the 'better view'" without regard to the status of the lex fori, thus invoking the very heart of the ruling in Erie R. Co. v. Tompkins. Exploration in detail of the application in later opinions of the Klaxon and Griffin cases emphasizes their requirement for the application in federal courts of the law of the state where the court sits in respect of conflict of laws.

■ However, giving these opinions and their discussions, (with the exception of the rather summary ruling in the Waggaman case), their fullest logical consequence, it does not appear to the court that they necessitate or even suggest the conclusion to which the plaintiff invites the court. They do not, in the estimation of the writer of this memorandum, nullify the rule that "the law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice, without plea or proof." Lamar v. Micou, 114 U.S. 218, 5 S.Ct. 857, 859, 29 L.Ed. 94; Faris v. Hope, 8 Cir., 298 F. 727; Erie R. Co. v. Tompkins, supra, neither overrules, nor impinges upon, that rule of pleading and evidence rather than of substantive law, which has long been recognized as obligatory upon the federal courts in consequence of their character as courts of the nation wherein no state is a foreign state. Let it be clearly noted that these considerations are set down here not in support of any right of this court either to determine this case according to any paramount federal rule of general or common law, or to determine on

its own responsibility what the law of Iowa should be, but rather in assertion of the duty of this court to determine the applicable law of Iowa from the statutes of that state and the decisions of its Supreme Court, through resort to judicial notice without specific pleading or proof.

So it would seem to be reasonable that, applying the Nebraska law upon the question of conflict of laws, the filing of a petition or complaint grounded upon negligence occurring wholly in Iowa sufficiently brings into operation the Nebraska rule that in such a situation the lex loci delicti applies, McCown v. Schram, 137 Neb. 498, 289 N.W. 890; Id., 139 Neb. 738, 298 N.W. 681. In fact, that rule is carried in Nebraska to the extent that it imports into a Nebraska suit upon the ground of negligence in a foreign state the law of the latter state upon the burden of proof, as well as the substantive effect, of contributory negligence. Olson v. Omaha & C. B. St. R. Co., 131 Neb. 94, 267 N.W. 246. Cf. the query, study, and discussion in Sampson v. Channell, supra.

There remains only the matter of how the lex loci delicti is to be pleaded and proved. In the state court, through long usage, by reason of the territorial circumscription of the government of its creation, the law of a foreign state must be specially pleaded and proved and Nebraska so holds. First State Bank v. Conant, 117 Neb. 562, 221 N.W. 691. But, under the rule heretofore adverted to, this court is not thus restricted. It must take judicial notice of those laws and apply them as they are applied in the courts of the state whose law is made material by the mere allegation of the pleadings touching the point of origin of the cause of action. There is no question respecting whose law governs. The only distinction arises in the technique of pleading and proof, and that distinction issues from a very real difference in the constitution of the two judicial systems.

All this is quite conformable to Erie R. Co. v. Tompkins, which (making due acknowledgment of the peril of oversimplification) simply broadened the application of the Federal Judiciary Act of September 24, 1879, 28 U.S.C.A. § 725, to include, and require the application of, the common or judicially determined law of the state in question as well as its statutes, and to negative the objective validity of any "federal general common law". The application of state statutes was reaffirmed and left unchanged, and it must be remembered that the rule of judicial notice by federal courts of state law, statutory and judicially determined alike, arose when state statutes were already regarded as being within the intendment of 28 U.S.C.A. § 725.

The court, therefore, adheres to the view that upon the issues made, it was bound to observe Nebraska's rule upon conflict of laws and to administer the actual Iowa law, but that it was not hampered by any restrictive presumption binding upon the Nebraska state courts from the nature of their creation, but might—indeed, must—determine that law by judicial notice.

Finally, the court is satisfied that the motion for a new trial is not well taken on the narrower ground that the precise instruction at whose refusal the motion is manifestly directed is inadequate and not a correct and proper instruction and its denial was imperative. It will be found to be in essence, a peremptory instruction to find for the plaintiff. In the circumstances of its submission, moreover, its refusal was peculiarly proper. At 10 a.m. on the final day of the trial the plaintiff in writing submitted a request for the giving of five separate instructions, all of which, upon scrutiny will be found to be based upon the law of Iowa. Womochil v. Peters, 226 Iowa 924, 285 N.W. 151; Kliebenstein v. Iowa Ry. & Light Co., 193 Iowa 892, 188 N.W. 129; Olson v. Des Moines City R. Co. 186 Iowa 384, 170 N.W. 466; Merryman v. Chicago G. W. R. Co., 135 Iowa 591, 113 N.W. 357; Code of Iowa, § 11210; (all of which the plaintiff had cited in a trial brief presented to the court). Wheeler v. Des Moines City R. Co., 205 Iowa 439, 215 N.W. 950, 55 A.L.R. 473; Crozier v. Hawkeye Stages, 209 Iowa 313, 228 N.W. 320. Essentially, these instructions correctly reflected the Iowa law and, though in somewhat altered language, they are embodied in the court's charge. Thereafter and, at 2:30 p.m. of the same day, on the threshold of the opening of argument, and, therefore, still within the time allowed by Rule 51, the single instruction No. 6 was presented to the court and requested by the plaintiff. At the precise time of each presentation the court personally made notation of the date and hour of presentation and in writing directed the filing of the tendered instructions for the sake of the record. This history is reflected by the original files in the action. Not only the substance but the

history of the presentation of instruction No. 6 require and justify its refusal, and the denial of any request for new trial founded on such refusal.