**BALTIMORE & O. R. CO. v. REAUX et al.**
No. 5081 Civil.

District Court, N. D. Ohio, W. D.
March 22, 1945.

On Motion for New Trial May 2, 1945.

J. S. Rhinefort, of Toledo, Ohio, for plaintiff.

Joseph C. Gribbin and Herman R. Miller, both of Toledo, Ohio, for defendants.

KLOEB, District Judge.

This is an action of interpleader brought by the Baltimore and Ohio Railroad Company under the provisions of U.S.C.A. Title 28, Section 41, Subdivision 26.

The facts of the controversy, as alleged in the bill, are here set out in summary. The company is a citizen and resident of the State of Maryland and has its principal place of business at Baltimore, Maryland. It is a railroad corporation, but is authorized by the State of Maryland to issue insurance on the lives of its employees upon a mutual or assessment plan; and did issue a policy or certificate of insurance through its relief department to an employee, named David R. Reed, in the amount of $1,000, on the 27th day of January, 1938. The policy named the claimant, Bertha R. Reaux, one of Mr. Reed's daughters, as beneficiary. On or about September 19, 1943, the company's relief department received a letter from Mr. Reed, dated September 17, 1943, and addressed to the Superintendent of the relief department, making the request that " * * * you change my insurance to read Mrs. Bessie R. Welshhans, instead of Mrs. Bertha Reaux * * * ". Mrs. Welshhans is Mr. Reed's oldest daughter and the other claimant herein. A form for the purpose of changing a beneficiary was mailed to Mr. Reed, but, instead of being sent to an address given in the letter mentioned, was sent to 222 South Market Street, Frederick, Maryland. Thereafter nothing further was heard from Mr. Reed, who died on October 22, 1943. The policy provided that "No change of beneficiary will be permitted without the written consent of the Superintendent of the Relief Department", and no change was ever made on the records of the company. Both daughters claim the proceeds of the policy and one, Mrs. Bertha R. Reaux, filed suit in the State Court, whereupon the company filed its bill of interpleader.

Both claimants were enjoined from prosecuting suit and were required to answer in this suit, so that their respective rights to the proceeds could be determined. Both have filed their answers.

The case was tried upon the pleadings and stipulations of the claimants. It was stipulated that Exhibits A, B and C should be received in evidence, that the allegations of fact in the bill of interpleader be accepted as true, and that David R. Reed lived at 222 South Market Street, Frederick, Maryland, until 1935, at which time he moved to the home of Mrs. Reaux in Toledo, where he remained until 1938, then going to the home of his niece in Cumberland, Maryland.

Exhibit A is the original "Certificate of Membership in the Relief Feature, Relief Department of The Baltimore and Ohio Railroad Company". Exhibit B is a copy of the "Regulations Governing the Relief Department of The Baltimore and Ohio Railroad Company". Exhibit C is a copy of the "Application to Retain Membership for Natural Death Benefit upon Expiration of Furlough or Leave of Absence, and after leaving service".

The parts of these exhibits important to a determination of the controversy are quoted in whole or in part as indicated. (Emphasis has been supplied).

Paragraph one of the Application provides, in part, as follows: "I, David R. Reed, of Pittsburgh, in the County of Allegheny, and State of Pennsylvania, * * * do hereby apply to continue my membership in the Relief Feature of the Relief Department, for the Natural Death Benefit only, *and consent and agree to be bound by all the Regulations of the Relief Department now in force, and by any other Regulations of said Department hereafter adopted, applicable to the Relief Feature;*"

Paragraph two of the Application provides, in part, that: "I Also Agree to pay in advance, * * * the sum of $1.40, as a contribution to the Relief Feature of said Department, as a condition precedent to securing Four times the Natural Death Benefit * * * provided by said Regulations, * * * paid out of the fund therein provided for, in the event of my death, to My daughter—Mrs. Bertha R. Reaux—*or to whomever I may hereafter from time to time designate in writing, by way of substitution without the consent of the person or persons previously designated, but with the written consent of the Superintendent;* * * * ".

Paragraph five of the Application provides that: "I Understand And Agree that this application, when accepted by the Superintendent, shall constitute a contract between me and the said Company, governed in its construction and effect by the laws of the State of Maryland, by which my rights as a member of said Relief Feature shall be determined as to all matters within its scope; that each of the statements herein contained shall constitute

a warranty by me, the truth whereof shall be a condition of payment of the benefits aforesaid."

Paragraph seven of the Application states that: "In Witness Whereof, I have signed these presents at Frederick, in the State of Maryland, this 11 day of January, 1938. Effective from and after June 24, 1937, date granted an annuity by the Railroad Retirement Board".

Paragraph nine of the Application states that: "The foregoing application is accepted at the Office of the Superintendent of the Relief Department, Baltimore, Maryland, this ——— day of Jan. 14, 1938."

Paragraph one of the Certificate of Membership provides, in part: "In Consideration of the representations, statements *and agreements* made in an application for membership, dated January 11, 1938, effective from and after 6/24/37, which are hereby referred to, and as warranties made a part hereof, * * *".

Paragraph five of the Certificate of Membership provides that: "No change of beneficiary will be permitted without the written consent of the Superintendent of the Relief Department".

The last paragraph of the Certificate of Membership states: "In Witness Whereof, The Relief Feature of the Relief Department of The Baltimore and Ohio Railroad Company has, by its Superintendent, executed and delivered this Certificate, and has caused the same to be duly countersigned, at Baltimore, Maryland, on this 27 day of January, 1938".

Article 15 of the Regulations provides, in part, as follows: "An employee who desires to participate in any of the forms of relief afforded by the Relief Feature, must execute an application * * *. This application, when accepted by the Superintendent, will constitute a contract between the applicant and the Company, binding each to be governed by the terms of the application and all the Regulations of the Department then in force, and by any other Regulations of said Department thereafter adopted. The evidence of the acceptance and approval of the application will be the issuance to the applicant of a certificate of membership."

Article 60 of the Regulations provides, in part, that: "No assignment of benefits or change of beneficiary will be permitted without the written consent of the Superintendent, * * *".

█ It is apparent that the right of either claimant to the insurance depends, first, upon the right or power of the decedent, David R. Reed, to change the beneficiary and, second, upon whether, if he had the power, it was effectually exercised. Both questions must be determined by the provisions of the contract of insurance and the law properly applicable thereto. "The power to change the beneficiary is a power of appointment, and the terms of its exercise are fixed by the contract between the insurer and the insured * * *." Reid v. Durboraw, 4 Cir., 272 F. 99, 101.

Here, the contract is comprised of the Application, Certificate and Regulations, Exhibits A, B and C, the pertinent parts of which have been quoted.

Claimant Welshhans relies strongly upon the case of Atkinson v. Metropolitan Life Insurance Co., 114 Ohio St. 109, 150 N.E. 748. Syllabus No. 1 in that case states: "Where a life insurance policy contains therein written a condition that such 'policy is written with the right of the insured to change the beneficiary,' such right is absolute and may be exercised at any time during the lifetime of the insured and the consent of the insurance company is not essential thereto."

Syllabus 4 states: "The provisions in a policy of insurance regulating the mode and manner of making a change of beneficiary are for the benefit of the insurance company and may be waived by it."

Syllabus 5 states: "In the event of a controversy between a former named beneficiary and a new beneficiary, if the insurance company interpleads in an action by a claimant to recover the proceeds of the policy it thereby waives any interest in the outcome of the action and thereupon the cause shall proceed between the respective claimants uninfluenced by any rights or interest of the insurance company."

█ Claimant Reaux contends, on the other hand, that the Atkinson case applies only to "oldline insurance companies", that this is fraternal insurance, and that, under Modern Woodmen of America v. Myers, 99 Ohio St. 87, 124 N.E. 48, the mode and manner of making changes of beneficiary is subject to reasonable regulation, and failure to comply with the strict terms of a policy of a fraternal and beneficiary society is fatal to an effectual change of beneficiary. Mrs. Reaux contends, also, that the company, having mailed the form for change of beneficiary to a former address

of Mr. Reed's, there is a presumption that he received it and failed to return it, thereby indicating that he had not done all in his power to change the beneficiary. This latter contention may be disposed of quickly. Unless a letter is correctly addressed to the street, number and city in which the addressee lives, the usual presumption that it was received will not be entertained. Henderson v. Carbondale Coal & Coke Co., 140 U.S. 25, 11 S.Ct. 691, 35 L.Ed. 332. There is some authority in Ohio that the presumption will arise even though the mail is not correctly addressed, if it appears that in the usual course of business, the Postoffice Department customarily delivered misdirected mail to the true address. Judge v. Masonic Mutual Benefit Ass'n, 10 Ohio Cir.Ct.R.,N.S., 473. There is no such evidence here.

Both claimants have assumed that the questions involved are to be determined by Ohio law. If this were true, it is difficult for the Court to see how the Atkinson case could control. Ohio General Code, Section 9459, provides that: "The provisions of sections ninety-four hundred and thirty to ninety-four hundred and fifty-eight, both inclusive, shall not apply to any association of religious or secret societies, or to any class of mechanics, express, telegraph or railroad employes, or ex-union soldiers, formed for the mutual benefit of the members thereof and their families or blood relatives exclusively or for purely charitable purposes."

This section is in the chapter devoted to the laws applicable to mutual protective insurance companies.

In State ex rel. Sheets v. Pittsburg, C. C. & St. L. R. Co., 68 Ohio St. 9, 67 N.E. 93, 64 L.R.A. 405, 96 Am.St.Rep. 635, Syllabus 1 reads, in part, as follows: "An association, established by a railway company, composed of some or all of its employés and the company, for the purpose of accumulating and maintaining a relief fund created by the voluntary contributions from their wages by employés who apply for membership in said fund and are admitted—the railway company to take charge of, and be responsible for, the funds * * * and to pay the members or their designated beneficiaries the stated share of the benefit fund * * * is not an insurance company or association * * *."

In Gearen v. Baltimore & O. R. R. Co., 10 Ohio Dec.Reprint 234, the Court held that the Baltimore and Ohio Employes' Relief Association was not an insurance company, but was an association formed for the mutual benefit of the members thereof. Under Ohio law, therefore, the relief department would appear to be a mutual benefit association. In the very case which forms the backbone of claimant Welshhans' theory, viz., the Atkinson case, supra, the Court, at page 117 of 114 Ohio St., at page 751 of 150 N.E., said: "Fraternal and beneficial insurance is in the nature of welfare work, and certain well-defined policies are set forth in the constitution and by-laws to which all members must strictly conform. Changes of beneficiary can only be made within certain limitations, and the rights and interests of certain members and the family are carefully safeguarded. The corporation reserves the right to exercise a certain measure of judgment and discretion, thereby widely differing from old-line insurance, which permits in certain classes of policies an unlimited discretion in the selection of a new beneficiary."

I am of the opinion, however, that this matter cannot be determined under Ohio law. It is rather difficult to imagine under what theory Ohio law should govern. Under Conflict of Laws, Vol. 11, Am.Juris., Sec. 152, Page 448, in the discussion of what law generally governs the construction and validity of insurance policies or contracts, it is said: " * * * All the authorities state that the lex loci contractus governs * * *".

In Alropa Corporation v. Kirchwehm, 138 Ohio St. 30, 33 N.E.2d 655, 657, the Court held that the validity and interpretation of a contract was to be governed by the laws of the state where such contract is made or is to be performed. Judge Matthias quoted with approval the statement of Mr. Justice Story in the case of Bank of United States v. Donnally, 33 U.S. 361, 8 L.Ed. 974, that: "The general principle adopted by civilized nations is, that the nature, validity and interpretation of contracts, are to be governed by the law of the country where the contracts are made, or are to be performed * * *."

Here, it was agreed that the application when accepted should constitute a contract between Mr. Reed and the company (paragraph five of the Application). The application was made and signed in Maryland and was accepted in Maryland (paragraphs seven and nine of the Application). The certificate of membership was executed,

delivered and countersigned at Baltimore, Maryland (last paragraph of Certificate). Certainly, then, it can hardly be denied that the lex loci contractus is Maryland. The state in which the application is made and accepted and the policy delivered is the place where the contract is entered into. Mutual Life Ins. Co. of New York v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L. Ed. 398; New York Life Ins. Co. v. Dodge, 246 U.S. 357, 38 S.Ct. 337, 62 L.Ed. 772, Ann.Cas.1918E, 593; Plaut v. Mutual Life Ins. Co., 4 Ohio Cir.Ct.R.,N.S., 94, affirmed 65 Ohio St. 586, 63 N.E. 1132.

Again, it was agreed that the application when accepted should constitute a contract between Reed and the company, governed in its construction and effect by the laws of the State of Maryland (paragraph five of the Application), and this agreement was referred to and made a part of the certificate of membership (paragraph one of the Certificate). In Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 24 S.Ct. 538, 48 L.Ed. 788, it was held that: "Parties contracting outside of a State may by agreement incorporate into the contract the laws of that State and make its provisions controlling on both parties, provided such provisions do not conflict with the law or public policy of the State in which the contract is made."

In Columbian Fraternal Ass'n v. Smith, 54 App.D.C. 308, 297 F. 887, the Court held that: "Where the application accompanying a certificate issued by a fraternal benefit association * * * stated that the certificate should be construed according to the law of the District of Columbia, it will be so construed, though both insured and beneficiary were residents of Maryland, and the contract was made there."

I feel that the Court is bound by the agreement here.

There has been no stipulation as to the character of the relief department and, therefore, while the Court is unwilling to determine the question on this ground, it might be well to point out the words of Chief Justice Marshall in Atkinson v. Insurance Co., supra, 114 Ohio St. at page 116, 150 N.E. at page 751, that: "The rights of the members of a fraternal and beneficial organization have been held to have their source in the constitution and by-laws of the corporation, and such constitution and by-laws must be construed by the laws of the state of such incorporation. This has been held in many cases, notably Supreme Council of Royal Arcanum v. Green, 237 U.S. 531, 35 S.Ct. 724, 59 L.Ed. 1089, L.R.A.1916A, 771. * * *"

Certainly it cannot be thought that the filing of the bill of interpleader in Ohio requires the application of Ohio law in order to determine what the rights of the parties are under the contract. As stated by the Court, in Sanders v. Armour Fertilizer Works et al., 292 U.S. 190, at page 200, 54 S.Ct. 677, at page 680, 78 L. Ed. 1206, 91 A.L.R. 950: "The applicant for interpleader often has a choice of forum, and he cannot at his will subject the rights of the contesting claimants to one set of laws rather than another. * * * The decision should be the same whether the interpleader is filed in Illinois or in Texas. * * *"

Here the company had a choice of filing its bill of interpleader in Ohio or in Pennsylvania, the States in which the respective claimants live, and as stated by the Supreme Court its choice of a forum is not determinative of the law to be applied.

I am convinced that this matter must be decided by the application of the law of Maryland. The fact that that law has been neither pleaded nor proved is immaterial as "The courts of the United States take judicial notice of the law of any state of the Union, whether depending on statutes or on judicial opinions." Lamar v. Micou, 114 U.S. 218, 5 S.Ct. 857, 29 L.Ed. 94. See, also, Baltimore & O. R. R. Co. v. Reed, 6 Cir., 223 F. 689.

The right of Mr. Reed to change the beneficiary and whether it was a qualified or unqualified one; the rights and duties of the company and whether provisions of the contract were for its sole benefit and could be waived, must all be determined by Maryland law. That law, decisive and conclusive as to this case, is well and clearly stated in the case of Ringler v. Ringler, 156 Md. 270, 144 A. 221. In that case, as here, the Baltimore and Ohio Railroad Company filed a bill of interpleader against two claimants of insurance. Mr. Ringler had become a member of the relief department and had designated as beneficiaries his wife, Ida, and his two children by his first wife, Ruth and Thomas. On the day of his death he signed a paper by which he attempted to change the beneficiaries named, which paper was in the following form: "I, Sylvester K. Ringler do hereby change the beneficiary of my insurance in

974

B & O Relief from the present beneficiary to my wife Mrs. Ida Ringler". This paper was not presented to the company until after his death.

 There, as here, both beneficiaries claimed the entire amount of the insurance, making it necessary for the company to file interpleader. The same contentions brought forward by Mrs. Welshhans in this case were advanced there, viz., that the approval of the superintendent was a mere ministerial act, that the insured had done all that he possibly could to effect a change, and that equity would not permit his will to be frustrated but would treat the change as complete and effective. The Court held that the filing of a bill of interpleader does not operate as a waiver of any defects in the claim of a beneficiary under an insurance policy in a controversy between beneficiaries claiming under different rights. The Court held further that the whole scheme of insurance provided by the relief department was "essentially fraternal, and for the protection of the employes of the railroad company and their dependents, and it contemplates a certain supervisory control vested in the superintendent of the relief department to be by him exercised so as to best serve the interests of the insured, the beneficiary, and the insurer * * *". The Court held that it was "impossible to reach the conclusion that the duty imposed upon the superintendent of the relief department was in any sense automatic or ministerial" and went on to say that "while it may be assumed that under that power such an official would not be authorized to act arbitrarily, capriciously, or without some sound and substantial reason, nevertheless it does involve the exercise of some discretion". No act of the insured, the Court held, can change the beneficiary unless there follows the discretionary act of the superintendent in consenting to the change, such discretionary act to be performed during the life of the insured. The Court held further that the respective rights of beneficiaries became fixed and vested at the death of the insured, and that the insurer could do nothing to waive performance of the discretionary act provided by the contract after the death of the insured.

For these reasons judgment must be for the claimant Mrs. Bertha R. Reaux.

Claimant Mrs. Bertha R. Reaux may have ten (10) days in which to file findings of fact and conclusions of law, and claimant Mrs. Bessie R. Welshhans may have five (5) days thereafter in which to file objections or suggested additions thereto.

On Motion for New Trial.

The claimant Welshhans' motion for new trial advances various grounds, but only one merits serious consideration. In its opinion, the court concluded that the law to be applied in determining the construction of the contract of insurance which formed the basis of suit was the law of Maryland. That law had not been pleaded or proved but the court took judicial notice thereof. Claimant Welshhans contends that this was error; that " * * * the correct rule and the one now universally adhered to is that Federal Courts do not take judicial notice of the laws of foreign states and unless the foreign laws are both pleaded and proved the court will presume, as stated in Waggaman vs. General Finance Company, 'the common law of another common law state is presumed to be the same as the common law of Pennsylvania.' " Besides Waggaman v. General Finance Co., 3 Cir., 116 F.2d 254, claimant also cites the cases of Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, and Griffin, Adm'r v. McCoach, Trustee, 313 U.S. 498, 61 S.Ct. 1023, 85 L. Ed. 1481, 134 A.L.R. 1462.

The court is of the opinion that claimant's position is untenable in that it advances an unwarranted extension of the doctrine of these Supreme Court cases, all of which stem from Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. The Supreme Court has held merely that, in diversity of citizenship cases, a Federal court must apply the conflict of laws rules of the State in which it sits. The court did that in this case. The conflict of laws questions involved were what law governed the construction of the contract of insurance in question, and where that contract had been made or entered into. Ohio law, as handed down by the Supreme Court of Ohio in Alropa Corporation v. Kirchwehm, 138 Ohio St. 30, 33 N.E.2d 655 (cited in court's Opinion), was to the effect that the construction of a contract is governed by the law of the State where such contract is made or is to be performed. It is not disputed that the contract was made in Maryland. The court, in its opinion, again cited Ohio law, along with other authority, to the ef-

fect that the place where the insurance application is made and accepted and the policy delivered is the place where the contract is entered into. The law of Maryland, therefore, was to be applied by this court because that would be the law which the courts of Ohio would apply.

It does not follow, however, that because Ohio courts would not take judicial notice of the law of Maryland this court may not do so. The doctrine of judicial notice is not a conflict of laws rule. In discussing this same question the court, in Petersen v. Chicago, Great Western Ry. Co., D.C., 3 F.R.D. 346, at page 348, called it a "rule of pleading and evidence rather than of substantive law, * * *." A concise and well-reasoned statement on this question is that of Judge Goodrich in Gallup v. Caldwell, 3 Cir., 120 F.2d 90, at page 94: "This rule as to judicial notice is not affected by Erie R. R. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. That case dealt with the question of the application of the substantive law of a given state, not how such substantive law is brought to the attention of a federal court. Indeed it is implicit in the Tompkins decision that it did not affect the rule as to judicial notice in the federal courts since the Supreme Court remanded the case to the Circuit Court of Appeals with instructions that the law of Pennsylvania be applied, even though the Pennsylvania law was not pleaded or proved, and the case was tried in the Southern District of New York. We conclude, therefore, that in the instant litigation we take judicial notice of the law of New Jersey in so far as it is applicable to the rights of the parties in this case."

See, to the same effect, Alcaro et al. v. Jean Jordeau, Inc., 3 Cir., 138 F.2d 767; Wells Fargo Bank & Union Trust Co. v. Titus, 41 F.Supp. 171; Metropolitan Life Ins. Co. v. Haack, et al., D.C., 50 F.Supp. 55; George v. Stanfield et al., D.C., 33 F. Supp. 486.

While it is true that the case of Waggaman v. General Finance Co., supra, sustains the position of claimant Welshhans, there should be considered, in the words of the court in Petersen v. Chicago, Great Western Ry. Co., supra, 3 F.R.D. at page 348, "the lack of thoroughness and maturity in its discussion of the point here argued." It should also be noted that the two cases from the Third Circuit, decided after the Waggaman case, viz., Gallup v. Caldwell, supra, and Alcaro v. Jean Jordeau, supra, are directly opposed to the doctrine of that case so that it can no longer be considered the law of that Circuit.

The motion for new trial is overruled.