Marshall, C. J.
 

 The major question in this case is one of correct interpretation of that provision of the policy quoted in the foregoing statement. The first two lines of that provision define
 
 *113
 
 the right of the insured to make a change of beneficiary. That right is without qualification. The remainder of the paragraph regulates the manner of the exercise of that right. The first two lines are mandatory upon the company, and the right thereby created may not be denied or abridged. Neither those two lines nor any other provisions of the policy which have been brought to our notice give to the company the exercise of any judgment or discretion. We need not in this case inquire into the latitude of the insured in selecting a beneficiary of the policy, because it is quite clear that the wife living with the husband has an insurable interest and that no objection could be interposed by the company in any event to the husband selecting her as his beneficiary. Neither the insurance policy nor public policy permits the company to interfere with his wishes in that respect. The agreed statement of facts leaves no doubt of the husband in fact desiring to make a change and to designate his wife as the beneficiary in the policy.
 

 The insured having instructed Paisley to transmit the policy to the home office to have an indorsement written thereon, and Paisley having written a letter to the home office pursuant to that request, and a proper indorsement having been prepared by the company and mailed to Paisley, without the matter having again come to the notice of the insured before his death, the question arises whether enough was done by the insured to effect a change of beneficiary.
 

 This question requires us to determine whether the insured had omitted anything which was essential to be done by him to comply with the essential
 
 *114
 
 regulations governing the manner of exercising his right to change the beneficiary. This again must turn upon the proper interpretation of the condition of the policy and the strictness of such interpretation. Let us first assume that the condition should be strictly construed. It required that a written notice of the insured’s desire to designate a new beneficiary be filed at the home office, accompanied by the policy for suitable indorsement. The written notice was sent to the home office, accompanied by the policy, with the request that a suitable indorsement be made thereon to designate the wife as the new beneficiary. The written notice was not signed by the insured, but must necessarily have been signed by Paisley, because the agreed statement shows that the United States mails were employed and nothing short of a written communication was therefore possible. Paisley was either the agent of the insured or the agent of the company. If, as seems to be assumed by both parties to this controversy, he was the agent of the insured, then his act of writing the letter advising the home office of the desire to designate a new beneficiary necessarily constituted his act a written notice, and he being the agent of the insured his act was that of his principal. If on the other hand he was the agent of the insurance company only, the act of the company in mailing a form of indorsement to Paisley amounted to a waiver of the requirements of the policy, for reasons which will hereafter be discussed. It does not appear that the matter was again called to the attention of the insured in any way, and it is reasonable to assume that the insured believed he
 
 *115
 
 had done everything necessary to effect the change. A careful study of the clause of the policy shows that it contains no requirement that the indorsement be made on the policy during the life of the insured. Such a requirement would be wholly inconsistent with the right of the insured to change the beneficiary. This right must be held to be guaranteed to the insured at any time up to the moment of his death, and no condition in the policy should be held to be valid which would place it in the power of the company by delays, red tape, or technicalities, to defeat that right. It would be a strained interpretation of the language employed in the clause of the policy to hold that the matter remained in abeyance until such time as the company should see fit to write upon the policy a “suitable indorsement” to be submitted to the insured for his signature. The policy only requires a written notice to be transmitted to the home office, accompanied by the policy, for suitable indorsement. No provision of the policy has been called to our attention which requires the indorsement to be in any particular form, and any indorsement must therefore be held to be “suitable” which advises the company in unmistakable language of the designation of a new beneficiary. The conclusion is therefore irresistible that the first sentence confers the right to change without reserve, and the duty on the part of the company to effect the change is mandatory. The other provisions are directory and merely regulate the manner of exercising the right. Let us suppose that the insured had visited the home office and had orally stated to the proper officer of the company
 
 *116
 
 that he desired to change the beneficiary and the change had been indorsed upon the policy and proper notation made on the books of the company without any written notice on the part of the insured. Surely under such circumstances the claims of the new beneficiary must be recognized.
 

 We have so far discussed this feature of the case on principle. One of the difficulties of the case, which has caused a division of opinion, is the labyrinth of cases on this subject, many of which are utterly irreconcilable. It would not be profitable to review all the cases decided by the courts of other states and the federal courts. It would not even be profitable to discuss all of the earlier cases of this court. But there are two of the former decisions of this court which must be noticed.
 

 There is the unanimous desire on the part of the members of this court to do no violence to any former decisions of this court, and it will therefore be our purpose to distinguish the conclusions we have reached from the principles declared in
 
 Modern Woodmen of America
 
 v.
 
 Myers,
 
 99 Ohio St., 87, 124 N. E., 48. That case involved the interpretation of a policy issued by a fraternal insurance company. The Modern Woodmen of America was organized under the laws of the state of Illinois, and the policy provisions had been interpreted by the courts in the state of Illinois. The rights of the members of a fraternal and beneficial organization have been held to have their source in the constitution and by-laws of the corporation, and such constitution and by-laws must be construed by the laws of the state of such incorporation. This
 
 *117
 
 has been held in many cases, notably
 
 Supreme Council of the Royal Arcanum
 
 v.
 
 Green,
 
 237 U. S., 531, 35 S. Ct., 724, 59 L. Ed., 1089, L. R. A., 1916A, 771.
 

 Fraternal and beneficial insurance is in the nature of welfare work, and certain well-defined policies are set forth in the constitution and bylaws to which all members must strictly conform.Changes of beneficiary can only be made within certain limitations, and the rights and interests of certain members of the family are carefully safeguarded. The corporation reserves the right to exercise a certain measure of judgment and discretion, thereby widely differing from old-line insurance, which permits in certain classes of policies an unlimited discretion in the selection of a new beneficiary.
 

 The Modern Woodmen certificate which was under discussion in
 
 Modern Woodmen
 
 v.
 
 Myers, supra,
 
 contained a very carefully drawn condition defining the rights of the insured to change beneficiary, and the limitations upon that right. As a means of making the company’s supervision effective it was provided that such change could only be made by strict compliance with the provisions of the policy relating thereto, and any attempt to make change in any other manner would be absolutely void. It was therefore held in that case, six members of the court concurring, that a defense which alleged that the insurance contract had been construed by the laws of the state of its incorporation, which laws had decided that any attempt to make a change of beneficiary otherwise than in the manner provided in the con
 
 *118
 
 stitution, by-laws, and policy was ineffective, and further alleged that there was a failure to comply with the strict terms of the policy, constituted a good defense to the action.
 

 We have no desire to overrule the principle therein decided, but we. are of the opinion that a different principle should prevail in a policy of old-line insurance, which is upon a strictly commercial basis. A more recent case decided by this court, throwing some light upon this problem, is that of
 
 Arnold
 
 v.
 
 Newcomb,
 
 104 Ohio St., 578, 136 N. E., 206. That case involved a certificate of the Brotherhood of Locomotive Firemen and Enginemen, a fraternal beneficial association. That case is not at all inconsistent with
 
 Modern Woodmen
 
 v.
 
 Myers, supra,
 
 and yet it lays down a rather liberal rule of interpretation. Arnold was single when he took out a certificate in 1907 and therefore named his sisters as beneficiaries. Ten years later he was married and desired to name his wife as beneficiary. Ten months prior to his death he went before a notary public, and, on the form printed on the policy for change of beneficiary, revoked the designation of his sisters and named his wife as beneficiary. The policy was thereupon delivered to the wife, who, without any notice to the company, held it until after the death of the insured, when she sent it to the office of the company together with proof of death. The by-laws contained the following provision:
 

 “A change or transfer of beneficiary shall not be valid or have any binding effect until said certificate has been received by the general secretary and treasurer and by him canceled, and a new
 
 *119
 
 certificate issued wherein the new designation of beneficiary shall appear.”
 

 Neither the constitution and by-laws nor the Code of Ohio required the new certificate to be issued during the lifetime of the insured, and it was held by this court that the delivery of the policy by the insured to his wife, with the indorsement thereon, without notice to the company, and without sending the certificate to the general secretary to be canceled and a new certificate issued in place thereof, should operate as a change of beneficiary in favor of the wife.
 

 That case evidences a more liberal interpretation of fraternal insurance policies than the former decisions of this court, and is perhaps more liberal than the declarations of courts of other states of the Union, and is believed to be in harmony with the prevailing trend of authority.
 

 We have so far discussed the instant case by the measure of a strict interpretation of the provisions of the policy. The rule has sometimes been declared and generally approved that policies of fraternal and beneficial insurance should be construed with greater strictness than policies of old-line insurance. This rule is more fanciful than real. The true situation is that fraternal and beneficial societies are organized along different lines and for purposes essentially different from old-line companies. Fraternal societies have for their primary purpose the welfare of their members and co-operation for mutual benefit; insurance is only an incident to the fulfillment of that purpose; and the constitution and by-laws of such societies, all of which become a part of the insurance poli
 
 *120
 
 cies, are quite rigid in exacting limitations and prohibitions to the end that surviving dependents of the insured shall have the benefits of the insurance without possibility of being deprived thereof. Old-line insurance, on the other hand, is on a strictly commercial basis, and the company has no interest in the policies, or in the beneficiaries, except in so far as conditions may be necessary to protect the company from loss or litigation. It is therefore perhaps more correct to say that policies of fraternal insurance are more strict and rigid in their requirements, terms, and conditions than old-line policies, but that the rule of interpretation in both classes of policies should be the' same, and not different from the rule of interpretation of any other contract.
 

 There is another feature of this case which renders our problem less difficult. The fact that the company files an interpleader indicates that it has no interest in the outcome of this case. If any condition in the policy was in any sense vital to the insurance company, it could only be determined in favor of the company by an answer making a defense against the claims of the party whose rights were questioned by it. The Code of Ohio (Section 11241) requires that suits be maintained and defended by the real party in interest, and by the filing of an interpleader, disclaiming any interest in the outcome of the controversy, the rights of the company in the provisions of its policy must be held to be waived. As the case now stands, therefore, it is purely a question of the respective rights of the two claimants, uninfluenced by any alleged interests of the insurance company.
 
 *121
 
 This has been declared in a long line of cases, many of which have construed fraternal insurance policies similar in all essential respects to the policy in the ease at bar.
 
 McDonald
 
 v.
 
 McDonald,
 
 212 Ala., 137, 102 So., 38, 36 A. L. R., 761;
 
 Knights of Maccabees
 
 v.
 
 Sackett,
 
 34 Mont., 357, 86 P., 423, 115 Am. St. Rep., 532;
 
 John Hancock Mutual Life Ins. Co.
 
 v.
 
 Bedford,
 
 36 R. I., 116, 89 A., 154;
 
 O’Donnell
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 11 Del. Ch., 4, 95 A., 289;
 
 Modern Brotherhood of America
 
 v.
 
 Matkovitch,
 
 56 Ind. App., 8, 104 N. E., 795;
 
 John Hancock Mutual Life Ins. Co.
 
 v.
 
 White,
 
 20 R. I., 457, 40 A., 5.
 

 In the instant case the provision in the policy requiring written notice, and that the policy be forwarded to the home office, was solely for the benefit of the company and could therefore be waived by it. Manifestly that provision was designed to keep the company in contact with the insured and to provide the means of making certain the identity of the beneficiary, so that upon the death of the insured no question would be made as to the party entitled to payment, thereby avoiding necessity for litigation.
 

 In this case the company disclaims any interest in the outcome, and yet feels that there is sufficient informality in the manner of making the change to justify the interpleader. It therefore leaves the controversy between the claimants to the determination of the courts.
 

 The facts of this case clearly indicate the desire of the insured to change the beneficiary, and the insured has done everything required to be done by him to effect the change. If the company did not do all that was required to be done on its part
 
 *122
 
 to evidence its knowledge and approval of tlie change within a reasonable time, it has in any event waived the same by its interpleader and by submitting the rights of the claimants to the determination of the courts. As between the claimants the rights of the wife are clear. The judgment of the Court of Appeals must therefore be reversed and that of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Day, Allen and Robinson, JJ., concur.