In the instant matter, plaintiff's status as an "alcoholic" is conclusively presumed by virtue of his three drunk driving convictions. Ohio Adm. Code 4501:1-1-16 abrogates an individual's right to controvert every material fact which bears on the matter, and, therefore, establishes a conclusive presumption violative of due process.

Accordingly, plaintiff's motion to declare Ohio Adm. Code 4501:1-1-16 unconstitutional is sustained.

*Judgment accordingly.*

IN RE ESTATE OF CAPONE.

(No. 116337—Decided July 17, 1987.)

Probate Court of Stark County.

*Donald R. Ramsayer,* for plaintiff.
*Frank Lucas,* for defendant.

CLUNK, J. The facts in this case are not in controversy and are not complex. Albert Joseph Capone died on October 6, 1982 as the result of a motorcycle accident. The death was accidental and was not the result of any other person's negligence. At the time of decedent's death, he was employed by Asplundh Tree Experts Co. The employer provided a life insurance policy to its employees underwritten by American Life and Casualty Insurance Company. This policy has been identified in the trial as "Joint Exhibit 1" and provided life insurance of $15,000 plus an additional $15,000 of accidental death benefits.

On October 6, 1982, Albert Joseph Capone was unmarried and was survived by two minor children, namely, Sabrina Mae Capone, born September 29, 1975, and Amy Louise Capone, born March 12, 1974. These children reside with the mother, Rita Capone, who is the former wife of Albert Joseph Capone and the administratrix of his estate, and also the plaintiff herein.

On October 6, 1982, Albert Joseph Capone resided with Robin Patton, his fiancee, and the defendant herein.

The sole issue before this court is whether the life insurance and accidental death benefits in the total sum of $30,000 are payable to Robin Patton or to the estate of Albert Joseph Capone. Each is contending to be the sole lawful beneficiary by reason of the policy conditions.

It is necessary to review the applicable policy provisions in order to

assist in the resolution of the issue. The policy in question is a "group insurance policy," that is, it automatically provided coverage by the employer for all eligible employees. The employee did not have to take any affirmative action in order to have his life insured nor did he have to pay any premiums because under this policy the employer pays all premiums. The policy provides as follows:

"If, after the death of any Insured Individual, there is no beneficiary surviving to receive payment of the insurance, or if no beneficiary shall have been clearly designated, the amount of insurance shall be payable in one sum, at the option of the company, either:

"A. To any one or more of the following surviving relatives of the Insured Individual:

"1. Spouse;

"2. Child or children;

"3. Parent or parents;

"4. Brothers and sisters; or

"B. To the estate of the Insured Individual."

There was uncontroverted testimony by a crew supervisor of the employer that a form, "Defendant's Exhibit G," was given to the decedent to be filled out by the employee and returned to the employer. A similar form, identified as "Defendant's Exhibit D," was allegedly filled out by the decedent and then filed in a dresser drawer in a spare bedroom in the apartment occupied by the decedent and Robin Patton. This form lists under "Name of Beneficiary," the name "Robin Patton." The form is signed "Albert J. Capone," and is dated "9-30-82." A copy of this form was submitted by Robin Patton's legal counsel to the insurer along with a proof of claim form approximately one week after the death of Albert Joseph Capone. It is the contention of Robin Patton that the completion of this form was in fact a "Designation of Benefic-

iary," and although not delivered to the insurer prior to the insured's death should be sufficient to support her claim.

The policy contains under the "General Provisions" clauses a paragraph entitled "Change of Beneficiary," which provides as follows:

"CHANGE OF BENEFICIARY. The Insured Individual may without consent of the beneficiary change the beneficiary of his insurance by signed written election to the Company on forms furnished by the Company. The signed written election shall on the date received by the Company be effective as of the date signed by the Insured Individual. Any payment made by the Company prior to receipt of such designation shall fully discharge the Company to the extent of such payment."

The position of Robin Patton is also that the above-quoted paragraph does not have any application herein because there had never been a beneficiary designated by the insured and thus there was nothing to change.

On the other hand, the plaintiff maintains that the policy contains a beneficiary designation in the body of the policy and that to change this the insured must follow the procedure set forth above in the "Change of Beneficiary" clause.

This court has been unable to find a comparable Ohio reported case. One case cited by both parties is *Arnold* v. *Newcomb* (1922), 104 Ohio St. 578, 136 N.E. 206. The factual situation is not analogous to the case at bar but some of the law of the case has application. In *Arnold,* the insured went before a notary public and on a form printed on the policy for change of beneficiary revoked the previously designated beneficiaries and substituted his wife. The filling out of the form on the back of the certificate and the acknowledgement of same before a notary public

were in compliance with the policy provisions. The insured then delivered the policy to his wife, although the certificate (policy) provided that it was to be forwarded to the general secretary and treasurer.

The fraternal order that issued the certificate or policy of insurance refused to pay the widow because the beneficiary named on the policy did not correspond to the records of the company. The Supreme Court in this case enunciated a principle in beneficiary changes or beneficiary designations which has application in this case. Specifically, the court said:

"The relationship of the insured and insurer is founded on contract, and thus respective rights of the parties thereto are confined and limited to the valid terms of the contract." *Id.* at 582, 136 N.E. at 207.

Then, as part of the law of the case at paragraph three of the syllabus, the court said:

"In order to effect a change of the beneficiary named in the insurance policy or certificate the insured must follow and substantially comply with the method prescribed in the rules, regulations and by-laws of the association."

The court found the insured did everything he could in accordance with the terms of the contract to effect the change of beneficiary, and because the provisions of the contract were substantially complied with ordered the proceeds be paid to the surviving spouse.

The other Supreme Court discussion worthy of review and comment is *Atkinson* v. *Metropolitan Life Ins. Co.* (1926), 114 Ohio St. 109, 150 N.E. 748. In this case the insured actually called his insurance agent to his home to prepare the appropriate endorsement to change the beneficiary to his wife. Through a series of company foul-ups the endorsement of change of benefi-

ciary was not placed on the policy. This policy also contained the usual type of language which requires the endorsement to be on the policy to be effective. The court in following the principle of the *Arnold* case said:

"The facts of this case clearly indicate the desire of the insured to change the beneficiary, and the insured has done everything required to be done by him to effect the change." *Id.* at 121, 150 N.E. at 752.

The result was to honor the expressed desire of the insured and to pay the proceeds to the widow.

In the first case above described, the insured clearly expressed his intention to change his previously designated beneficiary by signing such a change on the policy itself and having the signature notarized and then delivering the policy to his wife, and in the second case by physically meeting with the agent for the company for the express purpose of changing the beneficiary and being informed by the agent that it would be taken care of.

Although there was conflicting testimony in the case at bar as to authenticity of the signature of the decedent on the form in question, it is the court's opinion that the preponderance of the evidence supported the fact that the decedent did sign the beneficiary form.

The evidence further showed that the executed form was found by Robin Patton in a dresser drawer in a spare bedroom in decedent's apartment approximately one week after the death of the insured, and that prior to that she knew nothing about the existence of the policy or who was the beneficiary.

It is this court's interpretation of existing Ohio case law that in order to effect a change of a beneficiary or to effect a designation of beneficiary to a life insurance contract there must be substantial compliance with the terms and conditions of the specific policy.

Further, it is this court's opinion that the group insurance policy in question does in fact contain a designation of beneficiary in the terms of the policy as previously set forth herein. A careful reading of that policy language leads the court to conclude that unless a beneficiary has been clearly designated, the beneficiary shall be paid in the specific sequential manner set forth in the policy.

It is the further opinion of this court that the decedent made a minimal effort to change his beneficiary and there certainly was not substantial compliance with the policy provisions. To the contrary, the decedent filled out a form and then filed it away without a word to anyone. We can only conclude that he had not with any degree of certainty determined that the person named on the form was the person he wanted to receive his insurance proceeds or he could have placed a stamp on the preaddressed card and mailed it. The decedent knew by a cursory review of the policy that if he did nothing it would be paid to his children or his estate.

Therefore, it is the court's finding and it is so ordered that the insurance proceeds in the amount of $30,000 shall be paid to the estate of Albert Joseph Capone and distributed according to R.C. 2105.06.

*Judgment accordingly.*