KERN et al., Appellants,

v.

MENTOR et al.; Miller, Appellee.

[Cite as *Kern v. Mentor*, 182 Ohio App.3d 447, 2009-Ohio-2437.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 2008–L–157.

Decided May 22, 2009.

448

Rodger A. Pelagalli Co., L.P.A., and Rodger A. Pelagalli, for appellants.

David E. Cruikshank; and Nelson, Sweet & Hurley and John J. Hurley, for appellee.

---

DIANE V. GRENDELL, Judge.

{¶ 1} Plaintiff-appellants, Douglas W. Kern Jr. ("Douglas Jr."), in his individual capacity and as executor for the estate of Douglas W. Kern Sr. ("Douglas Sr."), and Richard Kern appeal the opinion and journal entry of the Lake County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Diana Miller. Douglas Jr. and Richard are contesting the trial court's determination that Miller is the proper beneficiary of a life insurance policy covering Douglas Sr. For the following reasons, we reverse the decision of the court below and remand this matter for further proceedings consistent with this opinion.

{¶ 2} Douglas Sr., the father of Douglas Jr. and Richard, was employed by defendant, the city of Mentor, for 21 years beginning in July 1985. As a benefit of employment, Douglas Sr. received life insurance. Initially, Douglas Sr. identified his wife, Leni Kern, as sole beneficiary on the policy. Upon Leni's death, Douglas Jr. and Richard were identified as beneficiaries.

{¶ 3} In 1994, Douglas Sr. began dating Miller. In December 1995, Douglas Sr. and Miller became engaged, although they never married. From about 1998

until 2001, when their relationship ended, Douglas Sr. and Miller lived together in a house they jointly purchased.

{¶ 4} In 2001, Douglas Sr. began dating June Layman. Douglas Sr. and Layman lived together for about four years, beginning in 2002.

{¶ 5} In 1996, Unum became Mentor's life insurance carrier. In that year, Douglas Sr. completed a life and accidental-death beneficiary card identifying Miller, "friend," as sole beneficiary.

{¶ 6} In 1999, Anthem Life Insurance Company of Indiana became Mentor's life insurance carrier. In November of that year, Douglas Sr. completed an employee application identifying Miller, "fiancé[e]," as sole beneficiary.

{¶ 7} In January 2006, defendant, Minnesota Life Insurance Company, became Mentor's life insurance carrier.

{¶ 8} In August 2006, Douglas Sr. was diagnosed with cancer of the lungs and brain.

{¶ 9} On December 20, 2006, Douglas Sr. died.

{¶ 10} Douglas Jr. and Richard subsequently learned that the most recent beneficiary-designation form on file for Douglas Sr. was the Anthem form filled out in 1999 identifying Miller as the sole beneficiary. Douglas Jr. and Richard attempted, unsuccessfully, to have Miller waive her claim to the proceeds of the life insurance policy.

{¶ 11} On August 20, 2007, the Kerns filed a verified complaint against Miller, Minnesota Life, and the city of Mentor. Among the relief sought, the Kerns requested that "each Defendant be required to interplead and set up any claims that they may have to the proceeds of the policy, and that the Court shall adjudge who is entitled to a recovery herein."

{¶ 12} Miller answered and filed a cross-claim seeking a declaration that she is entitled to the proceeds of Douglas Sr.'s life insurance policy. Mentor answered and filed a cross-claim against Minnesota Life for negligent misrepresentation, contribution, and indemnification. Minnesota Life answered and filed a cross-claim against Mentor. In its answer, Minnesota Life denied that interpleader was an appropriate remedy and asserted that "any and all claims made under the Minnesota Life Insurance policy of insurance at issue herein are subject to its terms, conditions and exclusions."

{¶ 13} The trial court set May 30, 2008, as the deadline for filing summary-judgment motions. Thereafter, the Kerns dismissed their claims against Mentor, and Mentor dismissed its claim against Minnesota Life.

{¶ 14} On April 1, 2008, Minnesota Life filed a motion for leave to file an amended answer to plaintiff's complaint and counterclaim and a crossclaim for

interpleader and declaratory judgment. Minnesota Life now asserted "a claim for interpleader and declaratory judgment whereby Minnesota deposits the policy proceeds plus interest with the Court, leaving the disputing parties to argue to the Court who is the proper beneficiary, and having Minnesota Life discharged from liability and otherwise dismissed from this action." In the motion, Minnesota Life explained that normally it would have moved the trial court for interpleader in its initial answer but was unable to do so in the present case because of Mentor's cross-claims against it. Since Mentor has dismissed its claims against it, "[t]here is no reason for Minnesota Life, upon the deposit of the insurance funds, to continue to expend time and money on this issue."

{¶ 15} In May 2008, the Kerns and Miller filed motions for summary judgment.

{¶ 16} Layman, Douglas Sr.'s fiancée at the time of his death, testified that one morning after they had begun living together and before Douglas Sr.'s diagnosis, he called her from work. Layman testified by affidavit that Douglas Sr. told her "that he was changing the beneficiaries on his life insurance policy * * * and that he was filling out the change of beneficiary form and then sending it through inter-office mail." According to Layman, Douglas Sr. was changing the policy's beneficiary so that Douglas Jr. and Richard would receive the proceeds.

{¶ 17} After Douglas Sr.'s diagnosis with cancer, Layman testified that Douglas Sr. told her that the life insurance policy through his employment with Mentor "was taken care of" and the proceeds "will go to the boys."

{¶ 18} Richard testified by affidavit that he had numerous conversations with his father following the diagnosis and that his father clearly stated his intention that the proceeds of the Minnesota Life policy should be divided evenly between him and Douglas Jr.

{¶ 19} In August 2006, Douglas Sr. and Douglas Jr. met with Roseanne Graham, then Mentor's acting personnel director and human-resources officer. Graham testified by deposition that the purpose of this meeting was to discuss Douglas Sr.'s sick-leave and health-care benefits in light of his current medical condition. Graham testified that all issues involving employee life insurance are handled by the Mentor finance department and that the issue did not arise at the August 2006 meeting.

{¶ 20} Graham testified that Douglas Sr. and Douglas Jr. became emotional during the meeting and began to address one another: "[Douglas Sr.] said that he was so lucky and he felt blessed to have the boys and that everything he had was in order. And Doug Jr. said, 'My dad is meticulous in that he's got everything in perfect order.' And Doug, Sr. said, 'I have files at home.' And they were basically talking to each other with me there. And Doug, Jr. said, 'You got us where we are today; now it's our turn to take care of you.' And

that's about when Doug, Sr. said, 'The boys know where everything is and everything will go to the boys.'" This meeting lasted about 20 minutes.

{¶ 21} On October 10, 2008, the trial court granted Miller's motion for summary judgment and declared her the sole beneficiary of the Minnesota Life Insurance policy. The court ruled: "[W]hile Douglas Kern, Sr. expressed his intent that the proceeds of his group life insurance policy were to go to his sons, he did not take or direct someone to take on his behalf, sufficient steps to notify his employer (or the insurer) or to otherwise carry out his intent."

{¶ 22} On October 15, 2008, the trial court denied as moot Minnesota Life Insurance's motion for leave to file amended answer to the plaintiff's complaint and counterclaim and cross-claim for interpleader and declaratory judgment.

{¶ 23} On October 21, 2008, the Kerns filed a notice of appeal from the trial court's October 10 and 15 judgment entries.

{¶ 24} The Kerns raise the following assignments of error:

{¶ 25} "[1] The trial court erred in overruling Appellants' Motion for Summary Judgment."

{¶ 26} "[2] The trial court erred in granting Appellee's Motion for Summary Judgment."

{¶ 27} Miller raises the following cross-assignment of error:

{¶ 28} "[1] In the absence of Civil Rule 22 Interpleader and the deposit of funds the Trial Court erred in not requiring Appellants to prove strict compliance with the Policy terms and conditions in order to change beneficiary [sic]."

{¶ 29} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "[t]he moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision. *Brown v. Cty. Commrs. of Scioto Cty.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153.

{¶ 30} The arguments raised by the Kerns and Miller are interrelated. Accordingly, they may be considered in a consolidated fashion. Both parties rely on the terms of the life insurance contract to support their positions.

{¶ 31} According to the policy, Minnesota Life Insurance "will pay the death benefit to the beneficiary or beneficiaries. A beneficiary is named by an insured to receive the death benefit to be paid at the insured's death." However, "[i]f there is no eligible beneficiary, or if the insured does not name one, [Minnesota Life] will pay the death benefit to * * * the insured's natural or legally adopted child (children) in equal shares, if living * * *." With respect to changing beneficiaries, the policy provides: "An insured can add or change beneficiaries * * *. A request to add or change a beneficiary must be made in writing. All requests are subject to our approval. A change will take effect as of the date it is signed, but will not affect any payment we make or action we take before receiving an insured's notice."

{¶ 32} Miller claims that since she is the only "named" beneficiary of record, she is entitled to the death benefit according to the policy's terms. The Kerns maintain that Miller is a beneficiary only under the prior life insurance policy, issued by Anthem and no longer in effect. Thus, they are entitled to the proceeds in the absence of a named beneficiary under the Minnesota Life policy.

{¶ 33} In support of her position, Miller relies on the following admission made by Minnesota Life Insurance: "When Minnesota Life Insurance Company issues a Group Life Insurance Policy that replaces or is successor to a Group Life Insurance Policy issued by a previous insurance carrier, it is the Plan Administrator who determines whether new beneficiary designation forms will be disseminated to the insured employees or if it will continue to recognized [sic] the prior designation forms. If the Plan Administrator determines that it will continue to honor the beneficiary designations made prior to Minnesota Life replacing a prior insurance carrier, Minnesota Life's customary and usual business practice is to accept and recognize as the eligible beneficiary(ies) the person or persons identified in the last written beneficiary designation submitted by the insured employee." In a separate admission, Minnesota Life acknowledged this "is the standard practice within the group life insurance industry for the group life company coming on the risk."

{¶ 34} Consistent with these admissions, Graham (Mentor's human-resource officer), deposed that in conversations with the finance department as plan administrator, it was discussed that new enrollment cards were not necessary since the new carrier would honor the cards filled out under the old policy.

{¶ 35} In light of this testimony, Miller is the named beneficiary under the Minnesota Life policy as a matter of law. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, at paragraph one of the syllabus. " 'If the meaning of the instrument, by itself, is intelligible and certain, extrinsic evidence is admissible to

identify its subjects or its objects, or to explain its recitals or its promises, so far, and only so far, as this can be done without any contradiction of, or any departure from, the meaning which is given by a fair and rational interpretation of the words actually used.'" *Blosser v. Enderlin* (1925), 113 Ohio St. 121, 132, 148 N.E. 393, quoting 2 Parsons, Contracts (9th Ed.) 717; *Kelly*, 31 Ohio St.3d at 132, 31 OBR 289, 509 N.E.2d 411.

{¶ 36} In the present case, the Minnesota Life policy does not define a "beneficiary" beyond being someone "named by an insured to receive the death benefit to be paid at the insured's death." Minnesota Life's practice of recognizing persons named as beneficiaries under prior group life policies is consistent with this definition. Contrary to the Kerns' position, nothing in the Minnesota Life policy requires beneficiaries to be named or re-enrolled at the inception of coverage. In fact, the policy expressly provides for the contingency when there is no named beneficiary at all.

{¶ 37} Miller argues further that since she is the named beneficiary under the policy, the trial court should have simply declared that she is entitled to the proceeds without considering Douglas Sr.'s expressed intentions. We disagree.

{¶ 38} The Ohio Supreme Court has held that "[t]he provisions in a policy of insurance regulating the mode and manner of making a change of beneficiary are for the benefit of the insurance company and may be waived by it." *Atkinson v. Metro. Life Ins. Co.* (1926), 114 Ohio St. 109, 150 N.E. 748, at paragraph four of the syllabus; *Rindlaub v. Travelers Ins. Co.* (1963), 175 Ohio St. 303, 25 O.O.2d 177, 194 N.E.2d 577, at paragraph one of the syllabus. "Where an insured during his lifetime communicated to the insurer his clearly expressed intent to name certain new beneficiaries and the insurer has interpleaded and deposited the policy proceeds in court, such expressed intention of the insured will be determinative of the rights of contesting claimants to the policy proceeds, notwithstanding the absence of the written approval by the insurer required by the provisions of the policy." *Rindlaub*, 175 Ohio St. 303, 25 O.O.2d 177, 194 N.E.2d 577, paragraph two of the syllabus; *Atkinson*, 114 Ohio St. 109, 150 N.E. 748, at paragraph five of the syllabus.

{¶ 39} As interpreted by this court, the *Atkinson* and *Rindlaub* decisions stand for the following proposition: "'Where the insurance company interpleads in an action by a claimant to recover the proceeds of the policy, it waives compliance with its regulatory provisions and the action proceeds between the respective claimants to the proceeds of the policy uninfluenced by any rights or interests of the insurance company. * * * Where the facts, in an action in which the insurer interpleads * * * indicate that the insured communicated to the insurer, or to those who cared for such matters [i.e. the Plan Administrator],

his clearly expressed intention to name a new beneficiary, such expressed intention alone is determinative of the rights of the contesting claimants, notwithstanding that the insured has not done everything reasonably possible under the circumstances to comply with the provisions of the policy as to the mode and manner of effectuating the change.'" *Williams v. Am. Mut. Life Ins. Co.* (Dec. 6, 1996), 11th Dist. No. 96–T–5478, 1996 WL 760908, at *5, quoting *Donahue v. Carpenter* (Mar. 31, 1992), 6th Dist. No. 91WD057, 1992 WL 66564, at *14.

{¶ 40} Miller argues that the above analysis, sometimes referred to as the "substantial compliance" test, is not applicable, since the trial court never ruled on Minnesota Life's motion for interpleader and thus the insurance proceeds were never deposited with the court. In other words, Minnesota Life did not effectively waive the necessity of compliance with the terms of the policy with respect to changing the beneficiary. We disagree.

{¶ 41} Minnesota Life unequivocally stated its position that after the dismissal of Mentor's cross-claims, it had no further interest in the dispute between the Kerns and Miller. Minnesota Life did not file a motion seeking summary judgment and did not oppose the motions filed by the Kerns or Miller. Although Minnesota Life did not deposit the proceeds of the policy with the trial court, neither had it paid the claim to either party.[1] To hold that Minnesota Life did not waive compliance with the change of beneficiary conditions because the policy proceeds were not actually deposited with the trial court would be to frustrate Minnesota Life's expressed intent for technical reasons of no practical significance.

{¶ 42} Moreover, the case law does not absolutely require the deposit of the disputed funds. The syllabus of *Rindlaub* does speak of the "insurer * * * deposit[ing] the policy proceeds in court." 175 Ohio St. 303, 25 O.O.2d 177, 194 N.E.2d 577, at paragraph two of the syllabus. The court in *Rindlaub*, however, was merely following the precedent established by *Atkinson*, which does not expressly mention the deposit of the proceeds. The discussion of the issue in *Atkinson* demonstrates that it is the insurer's intention that is material: "The fact that the [insurance] company files an interpleader indicates that it has no interest in the outcome of this case. If any condition in the policy was in any sense vital to the insurance company, it could only be determined in favor of the company by an answer making a defense against the claims of the party whose rights were questioned by it. * * * As the case now stands, therefore, it is

---

1. In November 2007, Mentor submitted a notice-of-death form to Minnesota Life, identifying the "Beneficiary as Recorded on Records of Employer" as follows: "Death proceeds to be interplead [sic] to the Lake County Court of Common Pleas in Case No. 07 CV 002477, as a dispute has arisen as to who is the beneficiary under this policy."

purely a question of the respective rights of the two claimants, uninfluenced by any alleged interests of the insurance company." 114 Ohio St. at 120, 150 N.E. 748; cf. Annotation, *Change of Beneficiary in Old Line Insurance Policy as Affected by Failure to Comply with Requirements as to Manner of Making Change* (1951), 19 A.L.R.2d 5, 35, 1951 WL 7452, fn. 7 ("In these cases the insurer has waived its defense by interpleading *or has shown in some other way* that it has no further interest in the litigation between the parties" [emphasis added] ).

{¶ 43} Finally, there is case law for the proposition that "the doctrine of substantial compliance is not limited to those cases in which the insurer, via an interpleader action, has deposited the insurance proceeds with the court." *Ogle v. Metro. Life Ins.* Co. (Dec. 23, 1994), 4th Dist. No. L–94–101, 1994 WL 709682, at *5; see, e.g., *Benton v. United Ins. Co.* (1959), 110 Ohio App. 151, 153–155, 12 O.O.2d 422, 159 N.E.2d 912 (applying the substantial-compliance test when the insurer had paid the death benefit prior to suit being filed).

{¶ 44} In the present case, Minnesota Life filed for leave to interplead and expressly disclaimed its interest in the outcome of the proceedings. Minnesota Life took no action inconsistent with this position. Thus, the trial court properly considered Douglas Sr.'s intentions and compliance with the provisions of the Minnesota Life policy.

{¶ 45} We take exception, however, to the test applied by the trial court. The court below stated: "Substantial compliance occurs when the facts clearly show: (1) the desire or intent of the insured to change the beneficiary; and (2) the insured did everything reasonably possible under the circumstances to carry out his intention to change the beneficiary." Cf. *Donahue*, 1992 WL 66564 at *13.

{¶ 46} This part of *Donahue*'s holding, however, does not apply to the present case. *Donahue* further held that "[w]here the facts, in an action in which the insurer interpleads indicate that the insured communicated to the insurer, or those who cared for such matters, his clearly expressed intention to name a new beneficiary, such expressed intention alone is determinative of the rights of the contesting claimants, *notwithstanding that the insured has not done everything reasonably possible under the circumstances to comply with the provisions of the policy* as to the mode and manner of effectuating the change." (Emphasis added.) Id. at *14. It was also this part of *Donahue*'s holding that this court approved in *Williams*.

{¶ 47} We must now consider whether a genuine issue of material fact exists as to whether Douglas Sr. "during his lifetime communicated to the insurer his clearly expressed intent to name certain new beneficiaries" in the policy. *Rindlaub*, 175 Ohio St. 303, 25 O.O.2d 177, 194 N.E.2d 577, at paragraph two of the syllabus.

{¶ 48} The evidence, as Miller acknowledges, demonstrates that Douglas Sr. was very familiar with the administrative procedures for designating a new beneficiary and had done so on four different occasions. Layman testified that, at some time prior to January 2006, Douglas Sr. told her that "he was changing the beneficiaries on his life insurance policy * * * and * * * was filling out the change of beneficiary form and then sending it through inter-office mail" to designate his sons, Douglas Jr. and Richard, as beneficiaries. After his diagnosis with cancer, Douglas Sr. told Layman that the matter "was taken care of." Graham testified that Douglas Sr. said that everything he had was in order and that "everything will go to the boys." Construing this evidence most strongly in the Kerns' favor, it is reasonable to infer that Douglas Sr. took the appropriate steps to notify the plan administrator of his intention to change beneficiaries. Therefore, summary judgment should not have been granted.

{¶ 49} The trial court found Douglas Sr.'s conduct "inexplicable" in light of the fact "that he knew he was gravely ill and was going to die." Since neither Douglas Sr. nor Douglas Jr. checked the information on file with Mentor regarding the group life insurance policy, they failed to "do all [they] reasonably could have done under the circumstances to carry [Douglas Sr.'s] intention into execution." As noted above, it was not necessary for Douglas Sr. to do everything reasonably possible under the circumstances. If, as Layman's testimony suggests, Douglas Sr. completed a change-of-beneficiary form as he had done on four prior occasions, he would have no reason to suspect that his intentions were not communicated to Minnesota Life or otherwise put into effect. The possibility of Douglas Sr.'s form being misplaced by another Mentor employee is not so remote as to require judgment to be entered in Miller's favor. Cf. *Colonial Life & Acc. v. Leitch,* 9th Dist. No. 24263, 2008-Ohio-6616, 2008 WL 5244588, at ¶ 14 (summary judgment reversed where there was evidence demonstrating that the insured "expressly stated his intention to remove Leitch as beneficiary, and that he had taken affirmative steps towards removing Leitch as beneficiary * * * [a]lthough he never completed the appropriate paperwork").

{¶ 50} Miller argues that Layman's affidavit is uncorroborated by documentary evidence, which one would expect in light of Douglas Sr.'s purportedly "meticulous" record-keeping. This argument goes to the weight of Layman's testimony. In a summary-judgment exercise, we do not weigh the evidence but must construe it in the Kerns' favor.

{¶ 51} The Kerns' assignments of error are with merit and Miller's cross-assignment of error is without merit.

{¶ 52} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, granting summary judgment in Miller's favor and declaring her the beneficiary under the Minnesota Life group life policy, is reversed. This

matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.

Judgment reversed<br>
and cause remanded.

O'TOOLE and CANNON, JJ., concur.

COLLEEN MARY O'TOOLE, Judge, concurring.

{¶ 53} I agree that the decision of the trial court should be reversed but reach that end by a different path than the majority. For this action, the relevant portion of the insurance certificate issued to Kern Sr. is that entitled "Death Benefit," at the subsection headed "To whom will we pay the death benefit?" After explaining who a beneficiary is, there is a default provision:

{¶ 54} "If there is no eligible beneficiary, or if you do not name one, we will pay the death benefit to

{¶ 55} " * * *

{¶ 56} "(2) your natural or legally adopted child (children) in equal shares, if living * * *."

{¶ 57} There is evidence in the record that it is the customary business practice of group life insurers to accept a designation of beneficiary made under a prior policy, if a new one is not filed by the insured. However, custom and usage in the insurance industry cannot be used to alter the unambiguous terms of a written insurance contract. *White v. Bur. of Natl. Salesmen's Assns.* (Nov. 8, 1979), 8th Dist. No. 40121, 1979 WL 210682, at *6. I would find that the terms of the subject Minnesota Life policy unambiguously render Kern Sr.'s children his beneficiaries under the default provision set forth above and that there is no need to look at industry custom.

{¶ 58} I respectfully concur.

TIMOTHY P. CANNON, Judge, concurring.

{¶ 59} I agree with the majority.

{¶ 60} I write separately to point out that the most important issue in this case is to achieve, if possible, a just and equitable result based on what might be determined was the intention of the deceased. Public policy demands that a broad range of information should be admitted in an effort to make this determination. Guidance as to what the public policy should be is set forth in the state of Ohio through R.C. 5815.33, providing that a prior designation of a spouse in a life insurance policy is invalid if the marriage is terminated by a subsequent

divorce, dissolution, or annulment. R.C. 5815.33(B)(1). The law will treat that spouse as predeceased. Id.

{¶ 61} In this case, we have a designation of Miller as the sole beneficiary, not in her name alone, but with the qualification of her status as "fiancé[e]." It is clear from the record this status was extinguished long before the death of the insured. What sense would our public policy make if we gave greater status to a former "fiancé[e]" than we do to a former spouse? I am well aware of the holding in other jurisdictions that indicate it is the name of the beneficiary, not the designated status, that controls. See *Congrove v. Ogan* (Mar. 26, 2002), 4th Dist. No. 01CA2639, 2002 WL 485793, at *7–12. However, under the facts of the instant case and in view of the clear public policy set forth in the statute, one wonders whether that analysis should be blindly followed in all cases.

{¶ 62} I agree with the majority that a factual question exists that would allow one to consider whether Douglas Sr. thought he had followed the necessary procedures to change the beneficiary. The trial court felt his failure to verify his beneficiaries was inexplicable. However, if the testimony of Ms. Layman is admitted through Evid.R. 804(B)(5) or some other exception and believed by a trier of fact, it is perfectly consistent with appellants' contention that Douglas Sr. expressed his intentions to the proper authority.